Michael R. Minkoff, Esq.
Bar No.: 084112013
BORRELLI & ASSOCIATES, P.L.L.C.
655 Third Avenue, Suite 1821
New York, New York 10017
Tel: (212) 679-5000
Fax: (212) 679-5005
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIEGO MORENO,<br><br>　　　　　　　　　Plaintiff,<br><br>　　-against-<br><br>484 SYLVAN AVENUE CORP., d/b/a GRISSINI RESTAURANT, and ANTHONY DEL GATTO, individually,<br><br>　　　　　　　　　Defendants. | Civil Action No.: 19-cv-19842<br><br>**<u>COMPLAINT</u>**<br><br>**JURY TRIAL DEMANDED** |

　　　　DIEGO MORENO ("Plaintiff"), by and through his attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for his Complaint against 484 SYLVAN AVENUE CORP., d/b/a GRISSINI RESTAURANT ("Grissini" or "the Restaurant"), and ANTHONY DEL GATTO, individually, ("Del Gatto"), (collectively, where appropriate, as "Defendants"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

### <u>NATURE OF THE CASE</u>

　　　　1.　　　This is a civil action for damages and equitable relief based upon Defendants' willful violations of Plaintiff's rights guaranteed to him by: (i) the overtime provisions of the Fair

1

Labor Standards Acts ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A., 34:11-56a *et seq*.; (iii) the minimum wage provisions of the NJWHL, 34:11-56a *et seq*.; (iv) the full payment provisions of the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A., 34:11-4.2; (v) the unlawful deductions provisions of the NJWPL, § 34:11-4.4; (vi) the anti-retaliation provisions of the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-3(c); (vii) New Jersey common law, as explained in *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58 (1980); and (viii) any other claim(s) that can be inferred from the facts set forth herein.

2.    On February 27, 2019, Plaintiff and Defendants entered into a written agreement to toll the statute of limitations for all of Plaintiff's claims arising under, *inter alia*, the FLSA, the NJWHL, the NJWPL, the CEPA, and New Jersey common law, from January 19, 2019 through May 31, 2019.   Plaintiff and Defendants subsequently entered into two successive tolling agreements, resulting in the tolling of the statute of limitations for these claims from January 19, 2019 through September 30, 2019.

3.    Plaintiff worked for Defendants, a Bergen County restaurant and its owner, as a parking attendant/valet from approximately 1994 to May 8, 2018.

4.    Throughout his employment, but as is relevant herein due to operation of the just-described tolling agreements, from on or about February 23, 2013 through the end of his employment on May 8, 2019 ("the Relevant Period"), Defendants willfully failed to pay Plaintiff the overtime wages lawfully due to him under the FLSA and the NJWHL, and his regular wages due under the NJWPL.  Specifically, during the Relevant Period, Defendants required Plaintiff to work, and Plaintiff did in fact work, in excess of forty hours per week or virtually each week, yet Defendants failed to pay Plaintiff at the rate of one and one-half times his regular rate of pay, or

one and one-half times the minimum wage rate, if greater, for many of the hours that he worked each week in excess of forty.  Instead, Defendants required Plaintiff to clock out after working a certain number of hours each week, forced him to work off-the-clock for many additional hours that were in excess of forty, and paid him nothing for this time, thereby violating the FLSA, the NJWHL, and the NJWPL.

5.      Furthermore, Defendants violated the NJWHL and the NJWPL by, respectively, failing to pay Plaintiff at least at the minimum wage rate for all hours worked, and making unlawful deductions from Plaintiff's wages to pay for other valet workers to perform services for Defendants.

6.      Making matters worse, after Plaintiff refused to consent to Defendants unlawfully reclassifying him as an independent contractor instead of an employee, Defendants retaliated by terminating Plaintiff's employment, in violation of the CEPA and *Pierce*.

## JURISDICTION AND VENUE

7.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201 *et seq*.  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under state law.

8.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

9.      At all times during the Relevant Period, Plaintiff worked for Defendants in New Jersey and was an "employee" entitled to protection as defined by the FLSA, the NJWHL, the NJWPL, and the CEPA.

3

10.     At all times during the Relevant Period, Defendant Grissini was (and is) a corporation duly organized under the laws of the State of New Jersey, with its principal place of business located at 484 Sylvan Avenue, Englewood Cliffs, New Jersey, 07632.

11.     At all times during the Relevant Period, Defendant Del Gatto was (and is) the owner of Defendant Grissini and was (and is) the person responsible for making all decisions on Grissini's behalf with respect to employees' hours worked and the rates and method of payment of employees' wages.

12.     At all times during the Relevant Period, Defendants were "employers" within the meaning of the FLSA, the NJWHL, the NJWPL, and the CEPA.  Additionally, at all times relevant to the FLSA, Defendant Grissini's qualifying annual business exceeded $500,000.00, and Grissini was (and is) an enterprise engaged in interstate commerce within the meaning of the FLSA as it employed two or more employees, purchased and sold food products and materials that originated out of state, provided valet parking services for vehicles that traveled across state lines, and accepted payments in cash that naturally moved across state lines, as well as credit cards as a form of payment based on cardholder agreements with out-of-state companies, the combination of which subjects Defendants to the FLSA's overtime requirements as an enterprise.

### BACKGROUND FACTS

13.     Defendant Grissini is a corporation that operates an Italian restaurant and catering company located at 484 Sylvan Avenue, Englewood Cliffs, New Jersey.

14.      Defendant Del Gatto was and is Defendant Grissini's President and owner, who in that capacity controls the terms and conditions of employment for all of Grissini's employees, in that he had the power to hire and fire all employees, supervised and controlled employee work schedules, determined the rate and method of wages paid to the Restaurant's employees, and was

and is responsible for maintaining the Restaurant's employment records.  To that end, Defendant Del Gatto personally set Plaintiff's rate of pay and weekly schedule, and both hired and fired Plaintiff.

15.     Defendants employed Plaintiff as a parking attendant/valet at the Restaurant from in or about 1994 until the termination of his employment on May 8, 2018.

16.     As his title suggests, Plaintiff's primary duty was to park and retrieve cars for the Restaurant's customers.   He performed his job along with two-to-three other parking attendants/valets per shift.

17.     During the Relevant Period, the Restaurant scheduled and required Plaintiff to work, and Plaintiff did work, between five and seven days per week, at varying hours per day, typically from sixty-nine and one-half to seventy-seven and one-half hours per week.  Defendants typically required Plaintiff to work, and Plaintiff did work, as follows:

        a.      from 11:30 a.m. to and 1:00 a.m., Monday through Friday, with a one hour break each day;

        b.      from 5:00 p.m. to between 12:00 a.m. and 1:00 a.m. on Saturdays; and

        c.      from 4:00 p.m. or 5:00 p.m. to between 10:00 p.m. or 11:00 p.m. on Sundays.

18.     In exchange for his work, Defendant purported to pay Plaintiff as follows:

        a.      from approximately February 2013 to December 2013, a regular hourly rate of $6.50 and an overtime rate of $9.75;

        b.      from approximately January 2014 to December 2014, a regular hourly rate of $8.25 and an overtime rate of $12.38;

c.     from approximately January 2015 through on or around February 4, 2018, a regular hourly rate of $8.38 and an overtime rate of $12.57;

d.     from on or around February 5, 2018 through the end of his employment, a regular hourly rate of $8.60 and an overtime rate of $12.57.

19.     Defendants required Plaintiff to, and in fact Plaintiff did, clock-in and clock-out every day that he worked.

20.     However, throughout the Relevant Period, the Restaurant required Plaintiff to clock out after a set number of hours each week - - typically between fifty-two and sixty - - while requiring that he continue to work without pay.  Therefore, Defendants did not pay Plaintiff at any rate of pay for this off-the-clock time, all of which was over forty hours in a week.

21.     Additionally, even when discounting Plaintiff's off-the-clock time, Defendants failed to pay Plaintiff at least at the New Jersey minimum wage rate during much of the Relevant Period.

22.     By way of example only, during the week of May 29 to June 4, 2017, Defendants required Plaintiff to work, and Plaintiff did work, six days, as follows: Monday through Friday from 11:30 a.m. to 1:00 a.m. with a one hour break, and Saturday from 5:00 p.m. to 1:00 a.m., for a total of seventy and one-half hours that week.  In exchange for his work that week, Defendants paid Plaintiff $8.38 per hour for his first forty hours of work, and $12.57 per hour for twelve hours that he worked over forty, for a total of fifty-two hours.  Defendants failed to pay Plaintiff anything whatsoever for the additional eighteen and one-half hours that he worked that week.  Moreover, Defendants failed to pay Plaintiff at least at the New Jersey minimum wage rate of $8.44 per hour for his first forty hours of that week, and one and one-half that amount (i.e., $12.66 per hour) for any hours worked over forty that week.

23.     In addition to failing to pay Plaintiff his wages, Defendants also unlawfully deducted wages from Plaintiff's pay by separate transaction during at least four months each year throughout the Relevant Period.  That is, Defendants hired extra parking attendants/valets to help during the Restaurant's busy season, which was from May through August, and occasionally during other holidays.  And throughout the Relevant Period, Defendants required Plaintiff to pay at least one such parking attendant/valet his wages by deducting $125.00 from Plaintiff's own weekly wages during these months and holidays.  Thus, throughout the Relevant Period, Plaintiff received $125.00 less each week in wages during approximately four months each year.

24.     Each hour that Plaintiff worked was for Defendants' benefit.

25.     Defendants acted in the manner described herein so as to minimize their overhead while maximizing profits.

26.     Finally, in the summer of 2016 and continuing until shortly before his termination, Defendant Del Gatto told Plaintiff to form a separate business entity so that Defendants could pay Plaintiff to perform the parking attendant/valet services for the Restaurant as an independent contractor instead of as an employee.  Yet despite this request, Defendants instructed Plaintiff that none of Plaintiff's job duties would change, and that Plaintiff would be prohibited from working with any companies or individuals other than Defendants.  The sole purpose of this proposed arrangement was so that Defendants could avoid paying their share of payroll taxes for Plaintiff.  Plaintiff refused to consent to Defendants' repeated demands to reclassify himself as an independent contractor, which Plaintiff believed in good faith to be a violation of law.

27.     After two years of suggesting to Plaintiff that he acquiesce to this arrangement, in late-April 2018, Defendant Del Gatto flatly demanded it, and gave Plaintiff an ultimatum that he either accept Defendants' unlawful request or that Defendants would terminate his employment.

Plaintiff refused, and as a result, Defendants retaliated by terminating Plaintiff's employment on May 8, 2018.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the FLSA*

28.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

29.    29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for any hours worked exceeding forty in a workweek.

30.    As described above, Defendants are employers within the meaning of the FLSA while Plaintiff was an employee within the meaning of the FLSA.

31.    As also described above, Plaintiff worked in excess of forty hours in a workweek, yet Defendants failed to compensate Plaintiff in accordance with the FLSA's overtime provisions.

32.    Defendants' actions were in willful violation of the FLSA.

33.    Plaintiff is entitled to his overtime pay for all hours worked each week in excess of forty at the rate of one and one-half times his regular rate of pay.

34.    Plaintiff is also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the NJWHL*

35.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

36.     NJWHL §§ 34:11-56a *et seq*. requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay, or one and one-half times the minimum wage rate, if greater, for any hours worked exceeding forty in a workweek.

37.     As described above, Defendants are employers within the meaning of the NJWHL while Plaintiff is an employee within the meaning of the NJWHL.

38.     As also described above, Plaintiff worked in excess of forty hours in a workweek, yet Defendants failed to compensate him in accordance with the NJWHL's overtime provisions.

39.     Plaintiff is entitled to his overtime pay for all hours worked each week in excess of forty at the rate of one and one-half times his regular rate of pay, or one and one-half the minimum wage rate, if greater.

40.     Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NJWHL's overtime provisions.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Minimum Wage Violations of the NJWHL*

41.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

42.     NJWHL §§ 34:11-56a *et seq*. prescribes a minimum wage that employers must pay to their employees for each hour worked.

43.     As described above, Defendants are employers within the meaning of the NJWHL while Plaintiff is an employee within the meaning of the NJWHL.

44.     As also described above, Defendants did not compensate Plaintiff at least at the minimum wage rate required by the NJWHL for each hour worked.

45.     At the least, Plaintiff is entitled to the minimum rate of pay for every hour worked.

46.     Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NJWHL's minimum provisions.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Pay Full Wages Owed in Violation of the NJWPL*

47.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

48.     NJWPL § 34:11-4.2 requires employers to pay the full amount of wages due to employees at least twice during each calendar month, on regular paydays that are designated in advance by the employer.

49.     As described above, Defendants are employers within the meaning of the NJWPL while Plaintiff is an employee within the meaning of the NJWPL.

50.     As also described above, Defendants failed to pay Plaintiff the full amount of wages due to him each pay period.

51.     At the least, Plaintiff is entitled to the difference between the wages that Defendants paid him and the wages to which he is entitled but for which Defendants did not compensated him.

52.     Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NJWPL's full payment provisions.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unlawful Deductions in Violation of the NJWPL*

53.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

54.     NJWPL § 34:11-4.4 prohibits employers from making any deduction from an employee's wages without express written consent, outside of certain limited enumerated

circumstances.   Nor may an employer require an employee to make any payment by separate transaction unless such charge is permitted as a deduction from wages under NJWPL § 34:11-4.4.

55.     As described above, Defendants are employers within the meaning of the NJWPL while Plaintiff is an employee within the meaning of the NJWPL.

56.     As also described above, Defendants unlawfully required Plaintiff to deduct a portion of his earned wages during certain weeks.

57.     As a result, Defendants are liable to Plaintiff for the amount of these unlawfully taken deductions.

58.     Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of NJWPL § 34:11-4.4.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Unlawful Retaliation under CEPA*

59.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

60.     N.J.S.A. 34:19-3(c) makes it unlawful for an employer to retaliate "against an employee because the employee . . . [o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes . . . is in violation of a law, or a rule or regulation promulgated pursuant to law . . . or . . .is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment."

61.     As described above, Defendants are employers within the meaning of the CEPA while Plaintiff is an employee within the meaning of the CEPA.

62.     As also described above, after Plaintiff engaged in activity protected under the CEPA, Defendants retaliated by terminating Plaintiff's employment.

63.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the CEPA, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

64.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the CEPA, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

65.     Additionally, Plaintiff is entitled to punitive damages for Defendants' malicious, willful, and wanton violations of the CEPA, and all other appropriate forms of relief, including reasonable attorneys' fees and costs and disbursements incurred in connection with this action.

## SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Violation of New Jersey Common Law-Whistleblower/Retaliation*

66.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

67.     Under New Jersey common law as articulated in *Pierce*, an employee may bring a private right of action where his employer terminates his employment in violation of "a clear mandate of public policy."

68.     As described above, Defendants are employers within the meaning of New Jersey common law while Plaintiff is an employee within the meaning of New Jersey common law.

69.     As also described above, Defendants have violated "a clear mandate of public policy" by terminating Plaintiff's employment in retaliation for his refusal to consent to unlawfully reclassifying him as an independent contractor when he was, in fact, an employee.

70.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of New Jersey common law as articulated through *Pierce*, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

71.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of New Jersey common law as articulated through *Pierce*, Plaintiff has suffered, and continues to suffer, emotional distress, including but not limited to, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

72.     Additionally, Plaintiff is entitled to punitive damages for Defendants' malicious, willful, and wanton violations of New Jersey common law as articulated through *Pierce*.

## DEMAND FOR A JURY TRIAL

73.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New Jersey laws;

B.     Restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

C.     Awarding all damages that Plaintiff has sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff would have received but for Defendants' unlawful payment practices;

13

D.      Granting an award of liquidated damages and any other statutory penalties as recoverable under the FLSA, the NJWHL, and the NJWPL;

E.      Granting an award in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages in connection with his retaliation claims, whether legal or equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that he would have received but for Defendant's unlawful conduct;

F.      Granting an award of damages to be determined at trial to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment in connection with his claims;

G.      Granting an award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish in connection with his claims;

H.      Granting an award of punitive damages, as provided by law;

I.      Awarding Plaintiff his reasonable attorneys' fees, as well as his costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

J.      Awarding pre-judgment and post-judgment interest, as provided by law; and

K.      Granting Plaintiff such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        November 4, 2019

                              Respectfully submitted,

                              BORRELLI & ASSOCIATES, P.L.L.C.
                              *Attorneys for Plaintiff*
                              655 Third Avenue, Suite 1821
                              New York, New York 10017
                              Tel. No. (212) 679-5000
                              Fax No. (212) 679-5005

                    By:
                              MICHAEL R MINKOFF, ESQ.